## **MUTUAL GENERAL RELEASE AND SETTLEMENT AGREEMENT**

This Mutual General Release and Settlement Agreement ("Agreement") is voluntarily entered into on July ____, 2020 by and between **TIM HANNAN** ("Plaintiff"), and ALTOUNION CONSTRUCTION, INC. AND TODD ALTOUNION, individually, (collectively "Employer" or "Defendants") (all parties referred to as the "Parties" or individually as "Party") .

WHEREAS, on February 13, 2019, a four-count Complaint was filed in the Northern District of Illinois, titled DAVID LIEBERMAN, on behalf of himself, and all other plaintiffs similarly situated, known and unknown, v. ALTOUNION CONSTRUCTION, INC., AN ILLINOIS CORPORATION and TODD ALTOUNION, INDIVIDUALLY, case No. 1:19-cv-00910 (hereinafter "the Lawsuit").

WHEREAS, after the initial filing, by agreement of the Parties, a Court-approved Notice was sent to various current and former employees pursuant to the provisions of the Fair Labor Standards Act, as amended ("FLSA"). As a result of that Notice, six (6) past and/or present employees of Defendants opted into the Lawsuit as Parties-Plaintiffs of which Plaintiff was one.

WHEREAS, the Parties wish to avoid further controversy, litigation, costs, legal fees, and inconvenience and the Parties desire to resolve all matters Plaintiff may have against Defendants and resolve the Lawsuit.

WHEREAS, Defendants deny the material allegations made in the Lawsuit, and specifically deny any wrongdoing and any liability whatsoever in connection with the claims asserted in the Lawsuit. Nothing in this Agreement shall be construed as an admission or concession by any Defendants of the truth of any allegations raised in the Lawsuit, or of any fault, wrongdoing, violation of law, or liability of any kind; and

WHEREAS, Plaintiff hereby executes this Agreement in exchange for settlement of his individual claims as described below.

NOW, THEREFORE, in exchange for the provisions, covenants, and mutual promises contained in this Agreement, the Parties agree to the following terms:

1. **Confidentiality**. The Parties agree to keep the fact and substance of this Agreement completely confidential. The Parties agree that this Paragraph 1 is a material term to this Agreement and that Defendants would not agree to this Agreement without Plaintiff's strict compliance with this Paragraph 1. Defendants agree to limit communication regarding this Agreement to those within the immediate corporate organization who need to know for business reasons. Notwithstanding the forgoing, Plaintiff acknowledges and agrees that Defendants may disclose the terms of this Agreement to a Court of Law, governmental agency, or otherwise in connection with its defense to any other wage claim action. Plaintiff may, without breaching this Paragraph, disclose the terms of this Agreement to Plaintiff's spouse, attorneys, financial advisors, insurers or accountants (to the extent that such disclosure is necessary in the preparation of tax returns, for the providing of financial or legal advice, or reasonably necessary in the ordinary course of corporate reporting or governance), provided that Plaintiff advises such persons that such information must be kept confidential, and such persons agree. The Parties may, without breaching this Paragraph, disclose the terms of this Agreement to (a) to any Federal, State, or other

governmental body (b) pursuant to a validly and duly issued order of a court or arbitration panel, or as may be required by subpoena, law or regulation, (c) as reasonably necessary to enforce the terms of this Agreement, or (d) upon the prior consent of all the Parties, provided that such persons are told that the information must be kept confidential. If a person not a party to this Agreement requests or demands, by subpoena or otherwise, that a Party disclose or produce this Agreement or any terms or conditions thereof, the Party shall immediately notify the other Party.

2. **Payment Terms**. In return for the good and sufficient consideration set forth herein, the Parties agree to the following:

   a) On or before seven (7) days after the "Effective Date" of this Agreement, as defined in Paragraph 8(c), or on or before seven (7) after the Court grants approval of this settlement, whichever date is later, Defendant shall issue to Plaintiff and deliver to the office of Plaintiffs' counsel, a check in the gross amount $**3,901.23** (Three Thousand, Nine Hundred and One Dollars and 23/100), minus regular payroll withholdings at the same rate as withheld during Plaintiff's previous employee payroll, with a 2020 tax year W2 to issue to Plaintiff from Defendant at the appropriate time.

   b) On or before seven (7) days after the "Effective Date" of this Agreement, as defined in Paragraph 8(c), or on or before seven (7) days of the Court granting approval of this settlement, whichever date is later, Defendant shall issue to Plaintiffs' counsel (the Billhorn Law Firm) and deliver to the office of Plaintiffs' counsel, a check in the amount of $24,479.00 (Twenty Four Thousand, Four Hundred and Seventy-Nine Dollars) as and for the initial payment of attorneys' fees and costs associated with the Lawsuit.

   c) On or before August 4, 2020, Defendant shall issue to Plaintiffs' counsel (the Billhorn Law Firm), and deliver to the office of Plaintiffs' counsel, a check in the amount of $26,606.00 (Twenty-Six Thousand, Six Hundred and Six Dollars and no cents), representing the remaining attorneys' fees.

   d) The payments described above shall be referred to collectively as the "Total Settlement Amount."

   e) The payments described in subsections (b) and (c) above shall constitute full payment of all attorney's fees and costs incurred by Plaintiffs and all attorneys' fees and costs associated with the Lawsuit. The payment of the attorneys' fees and costs as described above shall satisfy all claims that have been raised or could be raised against Defendants for attorneys' fees and costs for Plaintiffs' counsels' work on behalf of Plaintiff as well as all Plaintiffs who have opted in to the Lawsuit, and satisfy any and all claims of Billhorn Law Firm, or any other attorney or law firm, for services rendered to Plaintiff and all other opt in Plaintiffs in the Lawsuit. Plaintiff acknowledges that he has expressly authorized and directed Defendants to make this payment as described to Billhorn Law Firm. No monies shall be withheld from this payment to Billhorn Law Firm. No other monies shall be owed by Defendants in conjunction with

the legal services rendered to Plaintiff or any opt in plaintiff relative to the Lawsuit.

f) If any payment recited above is received at Plaintiffs' counsel's office more than seven (7) days after the referenced due dates, a $500.00 penalty per Plaintiff shall apply and, for the two (2) attorneys' fees payments, a $1,000.00 penalty shall apply and be added to the total owed by Defendants under this Agreement. If a payment is more than 14 days late, the Agreement shall be deemed "defaulted".

g) Should Defendants be more than fourteen (14) days late on any payment and this Agreement deemed "defaulted" as described in subparagraph (g) above, Plaintiffs shall be entitled to petition the Court for enforcement of this terms herein including the seeking of a judgment for all outstanding amounts no paid. Plaintiffs shall also be entitled to all reasonable attorneys' fees and costs associated with pursuing and then collecting the remaining defaulted amounts, including any and all associated late fees as described.

3. **Taxes**. The corporate Defendant shall be responsible for payment of the Employer's portion of any payroll taxes on the W-2 payments made to Plaintiff but shall not be responsible for payment of any other tax liabilities, except to the extent otherwise provided by law. Nothing in this Agreement shall be construed as providing any advice regarding the payment of taxes or the tax consequences of any portion of the Total Settlement Amount. In paying the Total Settlement Amount, Defendants make no representation regarding the tax consequences or liability arising from any payment. Plaintiff understands and agrees that any and all tax liability that may be due or become due because of the payment referenced in this Agreement is Plaintiff's responsibility, and that Plaintiff will pay any such taxes that may be due or become due. Plaintiff agrees to bear all tax consequences, if any, attendant upon the payment of the above-recited sums.

4. **Mutual General Release.**

a. **Release By Plaintiff**. In consideration of the benefits, commitments, and representations in this Agreement, and to the greatest extent permitted by law, Plaintiff, for him/her self, his/her heirs, his/her executors, and/or administrators agree to release and forever discharge Defendants and their directors, officers, members, agents, attorneys, employees, representatives, trustees, administrators, fiduciaries and insurers, jointly and severally, in their individual, fiduciary and corporate capacities (collectively referred to as the "Released Defendants") from any and all legally waivable claims, demands, sums of money, contracts, controversies, agreements, promises, damages, costs, causes of action and liabilities of any kind or character whatsoever, and all claims brought, or which could have been brought, whether known or unknown, by Plaintiff against the Released Defendants through the Effective Date of this Agreement (as defined in Paragraph 8(c) below), and claims Plaintiff have or might have as of the Effective Date, whether known or unknown, including, without limitation, all claims related to Plaintiff's employment with Defendants, all claims Plaintiff could have brought in the Lawsuit, and without limitation, any and all claims in tort, for breach of contract, defamation, invasion of privacy, negligence, fraud or

3

misrepresentation, harassment, property damage, and any and all claims under Fair Labor Standards Act, Portal to Portal Act, Illinois Minimum Wage Law, Illinois Wage Payment and Collection Act, Chicago Minimum Wage Ordinance, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act ("ADEA"), the Older Worker Benefit Protection Act ("OWBPA"), the Americans with Disabilities Act, the Civil Rights Act of 1991, Section 1981 of the Civil Rights Act of 1866, the Equal Pay Act, the Family and Medical Leave Act, the Illinois Human Rights Act, and any and all other applicable federal, state, or local fair employment practices or other legally waivable employment statutes, constitutional provisions and ordinances, and any other claim under statutory or common law.

Plaintiff specifically acknowledges and recognizes that Paragraph 4 of this Agreement means that by accepting any of the benefits described in this Agreement and by signing this Agreement, Plaintiff cannot sue any of the Released Defendants for actions that occurred prior to the Effective Date (as further defined in Paragraph 8(c)).

b. **Release by Defendants.** In consideration of the benefits, commitments, and representations in this Agreement, and to the greatest extent permitted by law, Defendants and their directors, officers, members, agents, attorneys, employees, representatives, trustees, administrators, fiduciaries and insurers, jointly and severally, in their individual, fiduciary and corporate capacities agree to release and forever discharge Plaintiff, for him/herself, his/her heirs, his/her executors, and/or administrators ("Released Plaintiff") from any and all legally waivable claims, demands, sums of money, contracts, controversies, agreements, promises, damages, costs, causes of action and liabilities of any kind or character whatsoever, and all claims brought, or which could have been brought, whether known or unknown, by Defendants against the Released Plaintiff through the Effective Date of this Agreement (as defined in Paragraph 8(c) below), and claims Defendants have or might have as of the Effective Date, whether known or unknown, including, without limitation, all claims related to Plaintiff's employment with Defendants, all claims Defendants could have brought in the Lawsuit, and without limitation, any and all claims in tort, for breach of contract, defamation, invasion of privacy, negligence, fraud or misrepresentation, harassment, property damage and any other claim under statutory or common law.

5. **Exclusions From the Release Contained in Paragraph 4.** Nothing in Paragraph 4 restricts any Party's right to enforce this Agreement and the promises set forth in this Agreement. The Release in Paragraph 4 does not apply to (a) any claims arising out of any acts or omissions that occur after the Parties sign this Agreement, or (b) any claims or rights that cannot be waived by law. Neither the Release in Paragraph 4 nor anything in this Agreement prohibit a Party from making a good faith report to governmental authorities of suspected violations of law or cooperating with any governmental investigation or inquiry. Notwithstanding the forgoing, Parties hereby waive any and all rights to and agree that they will not accept any monetary recovery or other relief of any type from any Party which they might obtain as a result of or participation in such filing.

6. **Dismissal of Lawsuit**. Plaintiff agrees that he/she and his/her attorneys shall file a stipulation to dismiss the Lawsuit and all claims for relief asserted or could be asserted therein on

or before the fourteenth (14th) day after receipt of the check made payable to Plaintiff as provided for in Paragraph 2(e) above.

       7.       **Covenant Not to Sue**. Plaintiff promises and covenants that he/she will not file any lawsuit against Defendants nor the Released Defendants based upon any claim covered under the foregoing release in Paragraph 4, except that Plaintiff is not prohibited from bringing any claim under the Age Discrimination in Employment Act, as amended, wherein Plaintiff seeks to challenge whether he knowingly and voluntarily entered into this Agreement, or from exercising his protected rights under Paragraph 2 herein. Nothing in this Agreement restricts Plaintiff's right to enforce this Agreement and the promises set forth herein.

       8.       **Plaintiff's Acknowledgements and Representations**.

       a.       Except for the Lawsuit, Plaintiff acknowledges and represents that Plaintiff has not filed nor joined any other complaints, charges, or lawsuits with any court of law or governmental agency. Plaintiff acknowledges and agrees that Plaintiff has had adequate time to review and consider this Agreement before signing it. Plaintiff acknowledges and agrees that the Total Settlement Amount constitutes good, valid, and sufficient consideration for this Agreement. Plaintiff acknowledges and agrees that his/her Settlement Amount is consideration to which Plaintiff would not otherwise be entitled and is being paid in exchange for signing this Agreement. Plaintiff acknowledges that he/she has read and understands this Agreement. Plaintiff acknowledges and agrees that Plaintiff's Counsel reviewed, revised, and participated in negotiations over and drafting of this Agreement before the Plaintiff signed and executed this Agreement. Plaintiff acknowledges and agrees that she is entering into this Agreement knowingly and voluntarily.

       b.       Plaintiff acknowledges and understands that Defendants have provided Plaintiff with a period of twenty-one (21) days to consider whether or not to sign and execute this Agreement. Plaintiff acknowledges and agrees that Defendants have not asked Plaintiff to shorten the twenty-one (21) day time-period to consider whether to sign this Agreement. Plaintiff acknowledges and agrees that Defendants have not threatened to withdraw or alter any benefits due to the Plaintiff prior to the expiration of the twenty-one (21) day period. Plaintiff acknowledges and agrees that Defendants have not provided different terms to Plaintiff because Plaintiff decided to sign this Agreement prior to the expiration of the twenty-one (21) day time-period. If Plaintiff signs and executes this Agreement prior to the twenty-one (21) day time-period, then Plaintiff knowingly and voluntarily waives any claim that Plaintiff was not in fact given twenty-one (21) days to consider this Agreement.

       c.       Plaintiff acknowledges and understands that Defendants have advised Plaintiff of Plaintiff's right to revoke this Agreement within seven (7) days of signing this Agreement ("Seven (7) Day Revocation Period"). If Plaintiff decides to revoke this Agreement during the Seven (7) Day Revocation Period, Plaintiff must send written notice of the revocation to Defendants. This Agreement will not be effective or enforceable until the Seven (7) Day Revocation Period expires for the Plaintiff. Thus, this Agreement will become effective on the eighth (8th) day after Plaintiff has signed and returned this Agreement to Defendants ("Effective Date"), provided that Plaintiff has not revoked this Agreement during the Seven (7) Day Revocation Period.

        d.    Plaintiff acknowledges and agrees that as of the date Plaintiff signs this Agreement, (i) the Plaintiff has been properly paid by Defendants for all hours Plaintiff worked during Plaintiff's employment with Defendants, (ii) the Plaintiff has received all payments and benefits owed under any employment agreement or terms of employment with Defendants, (iii) the Plaintiff has been properly paid for all vacation pay and other paid time off the Plaintiff accrued during Plaintiff's employment with Defendants, (iv) the Plaintiff has properly received any other penalties or interest pursuant to federal or any state wage and hour laws from Defendants, and (v) the Plaintiff was completely reimbursed for all travel expense costs, if any, the Plaintiff incurred during the employment with Defendants. Plaintiff acknowledge and agree that this is a material representation of this Agreement.

        9.    **Mutual Non-Disparagement**. Plaintiff and Defendants, and their respective agents, agree not to directly or indirectly, in any capacity or manner, make, express, transmit, speak, write, verbalize or otherwise communicate in any way (or cause, further, assist, solicit, encourage, support or participate in any of the foregoing), any remark, comment, message, information, declaration, communication or other statement of any kind, whether verbal, in writing, electronically transferred or otherwise, that might reasonably be construed to be derogatory or critical of, or negative toward or regarding the other Party, provided, however, that nothing herein shall limit Defendants' right to assess Plaintiff's job performance in the normal course of its business.

        10.    **Neutral Reference**. Plaintiff agrees to direct all inquiries of a prospective employer to TODD ALTOUNION. If contacted by any prospective employer, Todd Altounion agrees to provide only dates of employment and the position worked by Plaintiff. Defendants specifically agree that no suggestion, inference or innuendo regarding the fact that Plaintiff engaged in litigation against Defendants will be made to any third-party or prospective employer of a Plaintiff. Defendants will not be responsible for any inquiries made to any other person or entity, including any inquiries to any current or former employee, other than Todd Altounion. The terms of this Paragraph 10 shall not apply to any disclosures required of Defendants by any state or federal law, rule, or regulation, or pursuant to a subpoena or other Court order.

        11.    **Non-Admission**. This Agreement is entered into solely for the purpose of settling the Lawsuit and disputed claims alleged or asserted therein. Nothing in this Agreement may be construed as an admission of liability by any Party towards any other Party. The Parties deny any liability, culpability, or wrongdoing towards each other.

        12.    **Severability**. The Parties agree that, to the extent any portion or covenant of this Agreement may be held to be invalid or legally unenforceable by a court of competent jurisdiction, the remaining portions of this Agreement shall not be affected and shall be given full force and effect.

        13.    **Waiver**. No waiver by either party of any breach of this Agreement, or the other Party's failure to perform any condition or provision of this Agreement, shall be deemed a waiver of any other provision or condition at that time or any prior or subsequent time.

14. **Entire Agreement**. This Agreement contains the entire agreement of the Parties with respect to the subject matter of this Agreement and supersedes all prior negotiations, agreements, and understanding with respect thereto, written or oral.

15. **Amendment**. This Agreement may be amended only by a written document signed by all Parties.

16. **Effect On Previous Agreements**. This Agreement supersedes any and all prior agreements, understandings, and communications between the Parties.

17. **Governing Law**. The Parties agree that this Agreement is made and entered into in the State of Illinois and in all respects shall be interpreted, enforced and governed under the laws of the State of Illinois. The Parties agree that only the Circuit Court of Cook County, Illinois or the Northern District Court of Illinois, Eastern Division will have jurisdiction over enforcement of or disputes arising from, relating to or concerning this Agreement. The Parties agree to the personal jurisdiction of those two courts for the purposes of this Agreement. The Parties expressly agree that no other court has jurisdiction, venue, and/or forum over disputes concerning this Agreement.

18. **Neutral Construction**. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties, regardless of who drafted the Agreement.

19. **Counterparts**. This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. In pleading or proving any provision of this Agreement, it shall not be necessary to produce more than one such counterpart. The parties further agree that signatures that have been scanned and received via email or fax shall constitute an original.

20. **No Obligation to Re-Hire.** Plaintiff understands and agrees that this provision entitles the Defendants to reject any of the Plaintiff's application for re-employment or assignment without any explanation or any liability. If Plaintiff files any lawsuit or litigation alleging retaliation for failure to re-hire, Plaintiff agrees and acknowledges that the Defendants may use this Paragraph as a complete defense of liability. Plaintiff agrees and acknowledges that this Paragraph will be a complete defense of Defendants' and the Defendants' liability for any such allegation that Plaintiff makes.

By signing this Agreement, the Parties agree to the terms of this Agreement, the Parties acknowledge that they understand this Agreement, the Parties consent to this Agreement, and the Parties execute this Agreement.

Plaintiff:

TIM HANNAN

_____

Date:_____

Defendants:

ALTOUNION CONSTRUCTION, INC.

By (Signature): _____

By (Printed Name): _____

Date: _____

TODD ALTOUNION, Individually

_____

Date: _____